TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

------------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: IACA-APA CLAIMS (PART I)
DATE: 06/20/2024 09:32:25 AM

RECEIVED

2024 JUL -1  AM 9: 13

CASE No.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

FARID FATA,
Plaintiff,

v.                                  CASE No.    2:24-cv-3778-MGL-MGB

UNITED STATES OF AMERICA,
FCI Williamsburg - UNICOR
Defendants.
_____/

PLAINTIFF'S MEMORANDUM BRIEF IN SUPPORT OF WORK RELATED INJURY UNDER THE
INMATE ACCIDENT COMPENSATION ACT (IACA) AND ADMINISTRATIVE PROCEDURE ACT (APA).

COMPLAINT FOR LOST-TIME WAGES

JURISDICTION AND VENUE

Plaintiff, Farid Fata ("Fata"), prose, respectfully submits his work-related injury claims cognizable

under the Inmate Accident Compensation Act (IACA), to review the correctness of his compensation under

the Administrative Procedure Act (APA), as the APA confers jurisdiction in federal courts.

I - PARTIES AND VENUE:

1- Plaintiff Fata, is a federal prisoner housed at FCI Williamsburg, South Carolina, provides his Memorandum

 Brief with factual allegations. Fata was at all times relevant to this action.

2- Defendant Federal Prisons of Industries, Inc. (FPI, Inc., Unicor) represented by Unicor Operations

manager Mr. Benjamin Hall (Ben. Hall), Unicor Factory manager at FCI Williamsburg Mr. Craig Broadwater

(Mr. Broadwater), and Fata's supervisor in Line 7 at FCI Williamsburg, Mrs. E. Dukes, are at all times

relevant to this action as Fata's injury occurred when Fata was on the job at Unicor while on the clock.

3- Defendant FCI Williamsburg, Salters, South Carolina, represented by its warden Mr. Graham and the

head of the Safety Department Mr. Chisolm who are at all times relevant to this action in light of Fata's

work related injury as the warden orchestrated a settlement agreement with Mr. Ben. Hall who conceded

to pay Fata his lost-time wages for work-related injury from June 28, 2023 to October 2, 2023.

4- The district of South Carolina is an appropriate venue because a substantial part of the events giving

rise to the claims occurred within this district.

I

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

II - LEGAL BACKGROUND AND JURISDICTION:

5- The Inmate Accident Compensation Act (IACA) provides an accident compensation procedure "for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. 4126 (c)(4). Fata submits his IACA claims under the APA, 5 U.S.C. 701 et seq., after fully exhausting his administrative remedies at FCI Williamsburg, South Carolina, without obtaining relief. See Thompson v. United States, 492 F.2d 1082, 1084 n.5 (5th Cir. 1974)(IACA "does not confer jurisdiction in the federal courts to review the correctness of prisoner compensation claims under the applicable regulations ... Rather, jurisdiction here is found in the Administrative Procedure Act ...")(5th Cir. 1974); Owens v. DOJ, 527 F.Supp. 373, 375 (N.D. Ind. 1981) ("Plaintiff's complaint prays for monetary damages as if it were an original cause of action. His remedy under 18 U.S.C. s 4126, 28 C.F.R. s 301, et seq. is however, merely judicial review of the administrative proceeding only."). Ellis v. Fed. Prison Indus., 1996 U.S. App. LEXIS 43627, at *2 (5th Cir. 1996).

6- Here, Fata is seeking review under the " APA" of a final agency (BOP) action on an administrative request to recover lost-time wages under the IACA, plus punitive damages and legal fees of the court's filing fees in pauper status. Such request of paying Fata his lost-time wages was initially granted in negotiations between FCI Williamsburg's warden and Mr. Chisolm on one side, and FPI's (Federal Prisons Industries, Inc.) Factory manager (Mr. Broadwater) and Unicor's Operations manager (Mr. Ben Hall) on the other side, who both conceded to pay Fata his lost-time wages but reversed course after the Safety Committee decided on October 12, 2023, that Fata's injury is not work-related but did not issue an "investigative report" and gave no reasons to justify its decision, absent complete records (see below). Fata's injury occurred while he was on the job manifested with his new and progressive right shoulder pain during and after performing double sewing operations simultaneously while Fata was on-the-clock (Doc. 1).

7- A "work-related injury" is defined to include any injury including occupational disease or illness caused by the actual performance of the inmate's work assignment." 28 C.F.R. 301.102(a). "Work location" is defined by the BOP as "any place that inmate is authorized to be performing his assignment. "BOP Program Statement 1600.09. "The cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job." Aston v. United States, 625 F.2d 1210, 1211 (5th Cir. 1980)(percuriam). Section 4126 not only covers injuries incurred while working in the prison, but includes pre-existing medical conditions that are subsequently injured or exacerbated in work-related incidents. See Vander, supra, 268 F.3d at 664; Wooten v. United States, 825 F.2d 1039 (6th Cir. 1987).

2

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

------------------------------------------------------------------------------------------------

Under BOP Program Statement 1600.11, the Institution Safety Committee meets quarterly and is chaired by the head of Safety department (Mr. Chisolm), must investigate a prisoner's injury while on the job and designate a recorder to prepare minutes. Minutes must be forwarded to the Committee members (Doc. 2). 8- Courts have broadly construed the term "work-related" injury. In Baynes v. United Sates, 302 Fed. Appx. 334 (6th Cir. 2008), the Sixth Circuit determined that an injury occurring during a trip to or from a job site, while on-the-clock, was a work-related injury. Baynes, 302 Fed.Appx. at 335-36; also see Payton v. United States, 2011 U.S. Dist. LEXIS 83187, 2011 WL 3240487 (E.D.N.C. July 28, 2011)(although the injury occurred while plaintiff was traveling to lunch, the court concluded the injury was work-related because the injury occurred while plaintiff was still on-the clock- and being paid.). In Wooten v. United States, 437 F.2d 79 (5th Cir. 1971), the Fifth Circuit determined that an inmate suffered a work-related injury where the inmate was injured on the work site while traveling to lunch. Wooten, 437 F.2d at 80 (finding inmate suffered a work-related injury while traveling on an elevator on his way to lunch). 18 USC 4126(c)(4) awards time-lost wages covering every injury that occurred during work activities, on the work site, or while the inmate was "on-the-clock. 301.102(a). See Goforth v. United States, 2010 U.S. Dist. LEXIS 106382, 2010 WL 3835541 (S.D.W.Va. Sep. 29, 2010)(denying summary judgment where there was "some evidence in the record to support [Plaintiff's] contention" that she was going to her job site at the time of her accident").

III- FACTUAL ALLEGATIONS :

9- Fata has been employed at FCI Williamsburg-Unicor since March 5, 2021, until he was taken off work detail by Mr. Broadwater on July 12, 2023 due to his workplace injury (Doc. 10). Fata's job description is to perform sewing Molle operations working at sewing machines from 7:30 am to 3:30 pm Monday through Friday. Since Mid February 2023, Fata's line 7 of Molle operations has experienced shortage of inmates workers, and Fata was asked to perform different types of sewing operations in line 7. Fata's main operation is to attach the top cover and top cover straps (operation No. 288) to the Molle bag. The second operation that Fata was asked to help intermittently as coverage due to the inmate worker unavailability is to attach the spindrift (operation No. 286) to the Molle bag. Those two operations require pulling on the material and carrying the heavy bags by hand, and carry and pull the bins that contain the necessary materials for each operation (Doc. 1). At no date and time before June 27, 2023 (date of Fata's workplace injury) was Fata ever asked to perform both operations 286 and 288 SIMULTANEOUSLY bouncing from one sewing machine to the other back and forth, absent workers assigned to perform both operations.

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

10- JUNE 26, 2023 AND JUNE 27, 2023:

On June 26, 2023 and June 27, 2023, Fata was asked again to perform both operations No. 286 and 288 SIMULTANEOUSLY bouncing from one machine (operation 286) to the other (operation 288) and both machines were missing finger protection device. The inmate who performs operation No. 286 was not available. The nature of performing alternating operations simultaneously leading Fata to carry the heavy bins and materials, required Fata to pull on his shoulder. At the end of performing both operations, Fata felt pain in his right shoulder. However, Fata took pain medication (Motrin) and continued to sew. On that day 6-27-2023, Fata did not know whether his shoulder pain was caused by a shoulder injury from pulling on the material or from lifting heavy bins during the performance of both operations. Fata's medical records do not show a history of shoulder injury or bone disease that preceded the date of the incident. And Fata was not at fault in performing the operations he was asked to do on those two days.

11- JUNE 28, 2023:

The next morning, on June 28, 2023, the inmate who usually performs operation No. 286 attaching the spindrift had an excused absence. There were 6 bundles of Molle bags that required attachment of spindrift, which is a huge work load for a single worker.

12- Fata was called to the office of his supervisor Mrs. E. Dukes (Foreman) who asked him to get on the sewing machine and perform the spindrift attachment (Doc. 1). No other inmate in line 7 was asked to perform the job or asked to help Fata jointly. Fata explained to Mrs. Dukes that he had already been helping the line in performing this operation, but can no longer perform the double work duty (operations 286 and 288) as he suffers shoulder pain and his and other inmates requests to employ more help (sewers) fell on deaf ears. Fata refused to execute the order in light of his shoulder pain that occurred during the performmnace of the double heavy duty operations.

13- On the same day, 6-28-2023, Fata was called to the office of Mr. Broadwater who expressed his concern why Fata took the path refusing to execute Mrs. Dukes order to perform the job, being singled out, and told Mr. Broadwater that he is not fit physically and from health standpoint to perform this heavy duty operation in light of his age of 58, with back and shoulder pain. (Doc. 1). Mr. Broadwater knew and failed to hire more workers in line 7 and opted to write a counseling report that Fata refused to sign as it contained "false allegations" such as Fata's failure to wear safety glasses, as Fata wears prescription glasses instead.

4

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

------------------------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: IACA-APA CLAIMS - (PART II)
DATE: 06/20/2024 09:32:18 AM

CASE No.

The counseling had no consideration to Fata's health and physical complaint nor whether the factory had provided Fata side shields to his prescription glasses, as none was ever provided to Fata.

14- Late during the day on 6-28-2023, Fata's shoulder pain increased in frequency and intensity which required Fata to report the next morning on 6-29-2023, to medical "sick call" because of progressive right shoulder pain. P.S. Fata does not have pre-existing right shoulder problems.

15- JUNE 29, 2023: (Doc. 3)

On June 29, 2023, 6:30 am, Fata reported to medical "sick call" for worsening right shoulder pain increasing in frequency and intensity (score 8). Fata reported that the pain started at work after he performed the double operations simultaneously. Fata did not know how he injured it whether because of pulling or lifting at work or combined. Fata was told to continue Motrin. X-rays were obtained on 6-29-2023. On 7-13-2023, Mrs. Truesdale, RN corrected her notes as to the mixed documentation of the site of pain: right versus left shoulder. She noted: "inmate complaining of right shoulder pain".

16- On June 29, 2023, at 9:54 am, Fata was told that he will be out of work (medical idle) until he sees a medical provider, for his shoulder condition is not a medical emergency (Doc. 4). Medical provider emailed Mr. Broadwater and safety on 6-29-2023 (Doc. 4):

"Again, inmates that complain of severe debilitating pain worsened by their job cannot be allowed to continue in said position".

Fata never had pre-existing shoulder pain before performing the double operation simultaneously. Fata's shoulder pain was exacerbated by the job as the medical provider noted and occurred while on the clock. Thus, it is considered as workplace injury. Vander v. U.S. Dept. of justice, 268 F.3d 661 (9th Cir. 2001); see Wooten v. United States, 825 F.2d 1039 (6th Cir. 1987).

17- On 6-29-2023, after completion of his medical sick call, Fata returned to his supervisor Mrs. Dukes and gave her the medical idle order (Doc. 5) but she denied knowledge of Fata's shoulder pain and injury as Fata reported to her on June 28, 2023.

18- Fata's communications with his supervisor Mrs. Dukes in line 7 on 6-28-2023, were witnessed by Fata's coworker Mr. Roderick Sanford who was present when Mrs. Dukes returned to line 7, and he was interviewed by Mr. Broadwater on 6-28-2023 after Fata had expressed his pain and physical inability to do the job (Doc. 6).

5

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

----------------------------------------------------------------------------------------

19- On 6-30-2023, Fata submitted a copout to Mrs. Dukes asking her to report his injury to "Safety Department" and complete the "Injury Report" BP-140 as required by OSHA (Doc. 7). Mrs. Dukes refused to take Fata's copout and asked him to remove her name and keep Mr. Broadwater's name on the copout only.

20- Because of Mrs. Dukes refusal, Fata reported to safety department at FCI Williamsburg and reported his injury that occurred while on the job, and while Fata was on the clock. Fata gave Mr. Chisolm (safety department) a copy of the June 29, 2023 and June 30, 2023 copouts (Doc. 7). Fata also emailed safety department of his interaction with his supervisor (Doc. 8). Accordingly, Mr. Chisolm asked Mr. Broadwater on 6-30-2023 to generate the inmate "Injury Report" BP-A0140 (Part 1, Injury Report).

21- On July 7, 2023, Fata continued to complain of right shoulder pain and emailed medical provider to be seen ASAP. Fata was told to look for callout as his shoulder condition is not an emergency that requires hospitalization (Doc. 9).

22- On 7-12-2023, Fata was called to Mr. Broadwater's office to complete the BP-140 "Injury Report". Mr. Broadwater conceded that Fata's right shoulder pain/injury was work-related as he noted in the report, Part 1, (Doc. 10). From 6-27-2023, (date of Fata's workplace injury) to 7-12-2023, at least four additional workers in Fata's line 7 quit their job because of increasing work load, absent any help.

23- The BP-140 Injury Report shows that Mr. Broadwater took Fata off work detail after Fata signed the report on day 14 after the injury. Mr. Broadwater violated the required 30-day timeframe on medical idle work related injury per FPI Policy Statement P8120.03 (Doc.11). He told Fata: "You are not able to work here being idle, you will have to re-apply after you are cleared by medical".

24- Mrs. Dukes and Mr. Broadwater denied that Fata reported an injury at anytime, even during the counseling session (Doc. 10), but they did not deny that Fata's injury is work-related as Mr. Broadwater noted in the "Injury Report". Mr. Broadwater kept question 13 of "witnessing inmates to injury" unanswered and omitted the testimony of inmate Roderick Sanford (Doc. 6) whom he interviewed on 6-28-2023 as Mr. Sanford witnessed Fata's communications with his supervisor on that day, and the workplace injury.

25- When Fata reported his shoulder pain to his supervisor on 6-28-2023, he did not know whether he was injured from pulling on the fabric or from lifting the heavy material. The BP-140 Injury Report shows that when Fata continued attaching the spindrift on 6-27-2023, his shoulder pain became more intense causing him to take Motrin (Ibuprofen) which was the reason why Fata rejected Mrs. Dukes' order to continue performing the heavy duty job assignment on 6-28-2023.

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

26- On 7-31-2023, Fata's right shoulder pain and mobility worsened despite taking Ibuprofen plus Tylenol. Fata notified medical as he has not seen a medical provider yet (Doc. 12).

27- On 8-4-2023, Fata was approached by two inmates employed at Unicor who stated that Mr. Broadwater is working with Safety Department to "block" Fata's Injury Report under the Inmate Accident Compensation Act (IACA). Mr. Broadwater has shared Fata's workplace injury at unicor with those two inmates in open discussions held in his office (Doc. 13). Fata emailed his complaint to Mr. Broadwater and to Mr. Chisolm and Mr. Watson (Associate Warden).

28- On 8-11-2023, Fata sent an electronic copout to Mr. Broadwater asking him to refrain from sharing Fata's physical injury with other inmates at unicor as one additional inmate came to Fata stating that Mr. Broadwater will block Fata's Injury Report filed with the Safety Department (Doc. 14). Fata again notified Mr. Chisolm of this event during mainline for fear of retaliation (Doc. 14).

29- Fearing for his safety from Unicor's retaliation, Fata filed a complaint to the Occupational Safety and Health Administration (OSHA) sent on August 1, 2023. Fata alleged three counts (Doc. 15).

30- COUNT ONE: Unicor's concealment of inmates' workplace injury and violation of Section 11(c)(1) of the OSH Act or 29 U.S.C. 660(c). (Doc. 15).

31- COUNT TWO: Unicor's Failure to provide Fata safety side shields for his prescription glasses and safety finger shields as required by the manufacturer package for Brother company (Doc. 15). Fata has signed for  or recived safety glasses, but did not receive side shields.

32- COUNT THREE: Violation of the Inmate Accident Compensation Act and BOP P8120.03 (Doc. 15).

33- On 8-7-2023, Fata received the response to his BP-8; Informal Resolution of his grievance filed on 7-2-2023 against Unicor (Doc. 16). Mr. Broadwater failed to answer Fata's complaint or provide remedy.

34- On 8-8-2023, Fata filed a BP-229 that alleged 6 counts. The warden has not answered Fata's BP-229.

35- End of August 2023, Fata was called to Mr. Chisolm's office to resolve or settle this matter. Fata's response was clear: "follow the LAW" under the IACA. Fata re-iterated his intent to go back to work at unicor after he is medically cleared. Fata has not yet been seen by a medical provider as of the date of the meeting.

36- Mr. Chisolm told Fata that the warden is reaching out to Mr. Ben Hall (Unicor's operations manager) to resolve this matter under the IACA.

37- On August 17, 2023, Fata received the investigative OSHA report signed by Mr. R.S. Dunbar (warden) sent to OSHA to answer OSHA Complaint No. 2066626 where the review of eye protection inventories

7

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

-------------------------------------------------------------------------------------------------

revealed supplies were low/absent (Doc. 18). The OSHA report supports Fata's complaint and BP-229 as

Mr. Broadwater lied on his counseling report that falsely accused Fata of not wearing his safety glasses

but Fata wears prescription glasses instead and was never provided side shields when he requested them

from his supervisor at unicor in May 2023 (Doc. 19) as unicor did not have any.

38- The August 17, 2023, OSHA report also confirms that when Fata's supervisor asked him to perform

operation 286, Fata's sewing machine was not equipped with the proper guarding as Fata noted in his

complaint to OSHA (Doc. 15). The safety finger guards were missing in Fata's sewing machine, and Fata's

supervisor Mrs. Dukes failed to instruct mechanics to place the finger guards into the proper position

as required by the manufacturer - Brother company (Doc. 18).

39- When OSHA initiated its investigation of Fata's complaint (Doc. 15), the OSHA safety officer at FCI

Williamsburg, Mr. Broughman, issued a report detailing Unicor's violations. The warden's report sent to

OSHA on 8-17-2023, altered Mr. Broughman's original report related to unicor's OSHA violations (Doc. 18).

40- Fata is asking this court to engage in discovery to obtain Mr. Brughman's original report (authentic)

from safety department that shows the true depth and extent of Unicor's OSHA violations as [proximate

cause] to Fata's injury that unicor failed to report to Safety department and OSHA. Fata has filed a

BP-8 against the warden's office in regard to the alteration of FCI Williamsburg's inspection report in

response to the OSHA complaint (Doc. 20)(In October 2021, FCI Williamsburg Unicor received an OSHA

citation related to safety issues that led to one inmate's injury for cutting (amputation) his finger while

on the job). The warden failed to respond and recommended filing a BP-10 bypassing a BP-229. Fata

filed a BP-11 under the PLRA (Doc. 20), but Region and Central Office failed to respond.

41- On 9-8-2023 and 9-16-2023, Fata asked his warden to respond to his BP-229 against unicor as the

deadline to respond under the PLRA has passed. During mainline, the warden asked Fata what remedy is

he requesting to settle the case, Fata responded: "Follow the LAW" -IACA- (Doc. 21).

42- On September 21, 2023, Fata was called to meet with Mr. Broadwater, and Mr. Ben Hall. Mr. Chisolm

was present at the meeting. Mr. Ben Hall conceded to pay Fata his lost-time wages from 6-28-2023 to date

of return to work. In fact, Fata received a wage for the month of September 2023. During the meeting,

Mr. Broadwater asked Fata to withdraw his BP-229, but Fata refused until his lost time wages are paid

under the IACA pending the safety committee determination. Fata told Mr. Ben Hall that he is planning

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

------------------------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: IACA-APA CLAIMS (PART III)
DATE: 06/20/2024 01:42:04 PM

CASE No.

to return to work at unicor pending medical evaluation and after medical clearance.

43- On 9-28-2023, Fata had a clinical encounter with the BOP medical provider for the first time since after his medical sick call on 6-29-2023. The provider diagnosed Fata with impingement syndrome of the shoulder and recommended that Fata return to work with restriction (Doc. 22).

44- Based on the medical provider evaluation on 9-28-2023 (Doc. 22), Fata was rehired at Unicor on 10-2-2023, after Mr. Broadwater discussed Fata's condition with medical provider on 9-29-2023 (Doc. 23).

45- On October 3, 2023, medical provider Mrs. Harrell, PA, discussed Fata's work restrictions with physical therapist (PT) who recommended to reinstate Fata's medical idle on October 4, 2023 (Doc. 24) for 3 months to allow further PT: Mrs. Harrell has also notified safety department and unicor. Those findings rebut the warden's response to Fata's BP-229 (Doc. 30, Admin. Remedy Case # 1173819-F1).

46- Fata is filing the physical therapy clinical encounters. Fata asked the physical therapist whether his shoulder's impingement and impaired muscle performance can be proximately caused and exacerbated by his work at unicor as Fata's injury occurred after Fata was pulling on the fabric and lifting the Molle bags. (Doc. 25).

47- At the request of Mr. Chisolm, Fata met with him and Mr. Broadwater in safety department on October 5, 2023. During the meeting, Mr. Chisolm pressed Mr. Broadwater to pay Fata his lost-time wages from the date of injury, as Mr. Chisolm's position is that this matter has already been agreed upon with Mr. Ben Hall during the September 21, 2023 meeting.

48- On October 10, 2023, Fata met with Mr. Broadwater who held a telephone conference with Mr. Ben Hall. Both parties agreed that Fata has been paid his lost-time wage for the month of September 2023. Mr. Hall added and told Fata: "we owe you the wages of July 2023 and August 2023, and one day of October 2, 2023". As to October 2023 and November 2023, Mr. Ben Hall stated that he would wait on the safety committee report for further payments / determination.

49- On October 16, 2023, Mr. Chisolm called Fata to his office and notified him that the Safety Committee determined that Fata's injury is not work related. (Doc. 26). In the report, Mr. Chisolm noted on August 7, 2023, that Fata should be counseled to report his injury to his supervisor, though reporting

9

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

Fata's injury to his supervisor under BOP Program Statement 1600.11 is not a determinative factor required to define a work related injury because Fata's injury occurred while on the clock; thus, Mr. Chisolm comment is moot (Doc. 1). Under BOP Program Statement 1600.09, "the cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job". Aston v. United Sates, 625 F.2d 1210, 1211 (5th Cir. 1980)(per curiam).

When asked whether he submitted :

(a) Fata's copouts reporting his pain or injury to his supervisor, and (b) the affidavit of Roderick Sanford who witnessed Fata's communication with Mrs. Dukes in line 7 on 6-28-2023, to the safety committee, Mr. Chisolm acquiesced. Mr. Chisolm could not comment on his report's conflicting recommendation to retrain Fata on the operating procedure of the equipment if his injury is determined as "not work related". Mr. Chisolm had no answer as Fata was at "no fault" in performing the operation and he followed instructions, and his completed BP-140 injury report still notes "work-related" (Part 1,Question 9). Mr. Chisolm kept Part 2, Question 4, "blanc" (Doc. 26), and refused to give Fata the minutes of the meeting.

50- On October 19, 2023, Fata filed a grievance BP-8 asking Mr. Chisolm as chair of the safety committee to explain the 180 degree change revoking the settlement agreement that Chisolm and the warden had set forth with unicor administration to pay Fata his lost-time wages for workplace injury and after unicor had conceded that Fata's injury is "work-related" as Mr. Broadwater noted in the "Injury Report" BP-140: For Fata's injury occurred while on the job and while on the clock. (Doc. 27).

51- On October 30, 2023, Mr. Chisolm responded to Fata's BP-8 (Doc. 28) but failed to answer to the safety committee's failure to issue its "investigative report" required under BOP Program Statement 1600.11 and to show the facts and reports of injury upon which it based its determination that Fata's injury is not work-related. Fata is asking this court to engage in discovery to obtain the safety committee meeting's "minutes" and any "documentary evidence" considered by the committee, as required under BOP Program Statement 1600.11. Accordingly, Fata filed a BP-229 to his warden. A BP-10 and BP-11 followed (Doc. 28). The safety committee had consistently failed to issue an investigative report in a pattern of improper injury investigation not based on complete facts and complete records. In fact, since the inception and opening of FCI Williamsburg unicor in September 2020, no single unicor inmate injured on the work site, while on the clock, had ever received lost-time wages under the IACA. Accordingly, under the Freedom Of Information Act (FOIA), Fata requested the safety committee's "minutes" from the agency represented by its supervisory attorney (Doc. 29), but the agency failed to comply with FOIA.

10

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

52- On October 24, 2023, Fata received the warden's response to Fata's BP-229 filed against unicor in August 2023; Administrative Remedy Case # 1173819-F1; (Doc. 30). The response came [immediately] after the safety committee determined that Fata's injury is not work-related. The response lacks credibility and is rebutted at multiple fronts as noted in Fata's BP-10 (Doc. 30). For the evidence and the record and OSHA report belie the warden's response, simply because the response was not prepared by him: For Fata never met with Mr. Ben Hall in the [warden's office] on September 21, 2023 as noted in the warden's response. During mainline, when asked whether the BP-229 response was his, the warden told Fata that it was prepared by Mr. Broadwater. Thus, Fata filed a BP-8 against his warden whose office notified Fata to file directly to the Regional Director in a BP-10 instead (Doc. 20).

53- On November 2, 2023, Fata had medical follow-up with the provider stated continued improvement in Fata's shoulder injury while continuing physical therapy. Fata updated Mr. Broadwater of his clinical encounter as Fata was on track to be cleared to return to work at unicor by January 4, 2024, after completing physical therapy (Doc. 31).

54- On November 16, 2023, Fata filed a petition to the Office Of Internal Affairs (OIA) and his warden under BOP Program Statement P1210.24, to investigate Mr. Broadwater and his supervisor Mrs. Dukes for making false statements in his "Injury Report" BP-140 considered as "official government document", based on which the Institution's Safety Committee determined that Fata's injury is not work-related amid the suppression of evidence as a pattern to cover-up inmates' injuries at unicor (Doc. 32). Fata forwarded his petition to SIS (Special Investigative Services) as to report these violations as required per BOP OIA Policy P1210.24.

Fata is filing the BOP Program Statement P1210.24 including its mandatory procedures (Doc. 33).

55- On 1-21-2024, still on medical idle status, Fata re-iterated his interest to return to work at unicor once the medical provider gives him clearance. Fata asked the head of Unicor's Quality Assurance department to be considered for a position once he is medically-cleared to return to work (Doc. 34).

56- Fata fully exhausted his administrative remedies filed individually against : 42 U.S.C. 1997e (a) Unicor - Mr. Broadwater (Doc. 17, 30); (b) Safety Committee chaired by Mr. Chisolm (Doc. 27, 28); (c) Warden at FCI Williamsburg - Mr. Graham (Doc. 20): Region and Central Office failed to respond.

57 - Fata asserts there exists a "conspiracy" between the warden and Safety Committee and Unicor to conceal and deny inmates' workplace injuries at unicor classifying them as non work-related injuries

11

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

based on false information that cause further harm with the intent to deny compensating lost-time wages under the IACA. The case of inmate Gary Thomas BOP Reg. No. 21645-032 is alarming. Mr. Thomas gave Fata permission to file the warden's response to his BP-229, Admin. Remedy Case # 1177969-F1, where inmate Thomas developed skin burns and nerve damage in both arms and hands from operating the heat searing machine at unicor, as he was not provided the proper PPE and appropriate gloves to sustain 500 degree Farenheit as required by the manufacturer. Here, the warden falsely claimed that the operator manual for the machine "does not require gloves" and falsely claimed that the local Safety department recommended that "latex gloves" can be worn if requested by the operator. Such assertions by the warden and unicor at FCI Williamsburg represent a blatant violation of safety measures as implemented by the manufacturer, cause further harm and are beyond reason. Later, the head of safety (Mr. Chisolm) rebutted the warden's false report and as a result, inmate Thomas' suffered permanent scars from skin burns over his arms and nerve damage as documented in his medical records (Doc. 35).

58 - Inmate Thomas filed an OSHA Complaint against FCI Williamsburg-Unicor for failing to provide him proper PPE under the instructions of the Manufacturer: Pearson Industries Prattville, Alabama, USA (Doc. 35). His BP-140 injury report falsely noted that his injury was not work related and the factory manager conceded that no gloves were provided, and the safety committee refused to complete Part II of the report that was kept "blanc". Thus, Mr. Thomas was denied compensation for lost-time wages.

59 - On May 11, 2024, still idle, Fata reported to medical his recurrent right shoulder pain that was progressive with mobility restrictions since the end of April 2024 (Doc. 36) as the recurrence of his "frozen right shoulder" from the injury warranted the medical provider.

60 - WHEREFORE, plaintiff demands engagement in Discovery requesting the electronic communications between safety department and Unicor (Mr. Broadwater) as well as the minutes of the safety Committee meeting on October 12, 2023 . Fata also requests judgment against defendants, and recovery for lost-time wages from June 29, 2023 to present under the IACA and APA, as he remains on medical idle due to his work-related right shoulder injury, plus legal fees to file this action in district court in pauper status, and punitive damages as the court deems proper. Fata is attaching his affidavit (Doc. 37).

62 - Signed on the 21st day of June 2024, under penalty of perjury.

Respectfully Submitted,

Farid Fata    *Farid Fata*

12