TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

---

FROM: 48860039 FATA, FARID
TO:
SUBJECT: IACA-APA CLAIMS (PART I)

CASE No. AMENDED COMPLAINT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

FARID FATA,
Plaintiff,

v.

CASE No. 2:24-cv-03778-MGL-MGB

UNITED STATES OF AMERICA,
FCI Williamsburg - UNICOR
Defendants.

_____/



## PLAINTIFF'S MEMORANDUM BRIEF IN SUPPORT OF WORK RELATED INJURY UNDER THE INMATE ACCIDENT COMPENSATION ACT (IACA) AND ADMINISTRATIVE PROCEDURE ACT (APA).

### COMPLAINT FOR LOST-TIME WAGES

### JURISDICTION AND VENUE

Plaintiff, Farid Fata ("Fata"), prose, respectfully submits his work-related injury claims cognizable under the Inmate Accident Compensation Act (IACA), to review the correctness of his compensation under the Administrative Procedure Act (APA), as the APA confers jurisdiction in federal courts.

I - PARTIES AND VENUE:

1- Plaintiff Fata, is a federal prisoner housed at FCI Williamsburg, South Carolina, provides his Memorandum Brief with factual allegations. Fata was at all times relevant to this action.

2- Defendant Federal Prisons of Industries, Inc. (FPI, Inc., Unicor) represented by Unicor Operations manager Mr. Benjamin Hall (Ben. Hall), Unicor Factory manager at FCI Williamsburg Mr. Craig Broadwater (Mr. Broadwater), and Fata's supervisor in Line 7 at FCI Williamsburg, Mrs. E. Dukes, are at all times relevant to this action as Fata's injury occurred when Fata was on the job at Unicor while on the clock.

3- Defendant FCI Williamsburg, Salters, South Carolina, represented by its warden Mr. Graham and the head of the Safety Department Mr. Chisolm who are at all times relevant to this action in light of Fata's work related injury as the warden orchestrated a settlement agreement with Mr. Ben. Hall who conceded to pay Fata his lost-time wages for work-related injury from June 28, 2023 to October 2, 2023.

4- The district of South Carolina is an appropriate venue because a substantial part of the events giving rise to the claims occurred within this district.



TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

-----------------------------------------------------------------------------------------------------------------

II - LEGAL BACKGROUND AND JURISDICTION:

5 - The Inmate Accident Compensation Act (IACA) provides an accident compensation procedure "for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. 4126(c)(4). Fata submits his IACA claims under the APA, 5 U.S.C. 701 et seq. after fully exhausting his administrative remedies. Thompson v. United States, 492 F. 2d 1082, 1084 n.5 (5th Cir. 1974)(IACA does not confer jurisdiction in the federal courts to review the correctness of prisoner compensation claims under the applicable regulations ... Rather, jurisdiction is found in the APA")(5th Cir. 1974). Ellis v. Fed. Prison Indus., 1996 U.S. App. LEXIS 43627, at *2 (5th Cir. 1996).

6 - Here, Fata is seeking review under the "APA" of a final agency (BOP) action on an administrative request to recover lost-time wages under the IACA for work related injury, plus punitive damages and legal fees in pauper status. The Gravamen of the Complaint is that the Safety Committee decided on October 12, 2023, that Fata's injury is not work-related as it relied on incomplete records and is contradicted by the evidence and testimony that support: (1) Fata did notify his supervisor of the injury on and after 6-28-2023, witnessed by Mr. Roderick Sanford on same date before Fata reported to sick call, and (2) Unicor and Chair of Safety Committee have conspired to conceal the hazardous work conditions that they omitted in Fata's BP-140 Injury Report as causative to Fata's injury, thus concealed from the Safety Committee. Fata's injury occurred while on the job, absent PPE (Personal Protective Equipment) manifested with his progressive right shoulder pain during and after performing the assigned "double sewing operations simultaneously" while on the clock (Doc. 1), absent PPE as shown in the OSHA report, and absent requested help amid workers' shortage. The alarming workplace injuries of Unicor workers Gary Thomas and Jonathan Shepard (OSHA citation in 2021), are similar to Fata's work related injury, that were denied by the Safety Committee based on incomplete or false information, absent PPE, after omitting the hazardous work conditions causative to their injuries.

7 - A "work related injury" is defined to include any injury including occupational disease or illness caused by the actual performance of the inmate's work assignment". 28 C.F.R. 301.102(a). BOP program Statement 1600.09: "The cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job". Aston v. United States, 625 F.2d 1210, 1211 (5th Cir. 1980)(per curiam). Section 4126 not only covers injuries incurred while working in the prison, but includes pre-existing medical conditions that are subsequently injured or exacerbated in work-related incidents. See Vander, supra, 286 F. 3d at 664; Wooten v. United States, 825 F. 2d 1039 (6th Cir. 1987). Under BOP P.S. 1600.11, the Safety Committee is chaired

------------------------------------------------------------------------------------------------

by the head of Safety department (Mr. Chisolm), must investigate a prisoner's injury while on the job and designate a recorder to prepare minutes. Minutes must be forwarded to the Committee members (Doc. 2).

8- Courts have broadly construed the term "work-related" injury. In Baynes v. United Sates, 302 Fed. Appx. 334 (6th Cir. 2008), the Sixth Circuit determined that an injury occurring during a trip to or from a job site, while on-the-clock, was a work-related injury. Baynes, 302 Fed.Appx. at 335-36; also see Payton v. United States, 2011 U.S. Dist. LEXIS 83187, 2011 WL 3240487 (E.D.N.C. July 28, 2011)(although the injury occurred while plaintiff was traveling to lunch, the court concluded the injury was work-related because the injury occurred while plaintiff was still on-the clock- and being paid.). In Wooten v. United States, 437 F.2d 79 (5th Cir. 1971), the Fifth Circuit determined that an inmate suffered a work-related injury where the inmate was injured on the work site while traveling to lunch. Wooten, 437 F.2d at 80 (finding inmate suffered a work-related injury while traveling on an elevator on his way to lunch). 18 USC 4126(c)(4) awards time-lost wages covering every injury that occurred during work activities, on the work site, or while the inmate was "on-the-clock. 301.102(a). See Goforth v. United States, 2010 U.S. Dist. LEXIS 106382, 2010 WL 3835541 (S.D.W.Va. Sep. 29, 2010)(denying summary judgment where there was "some evidence in the record to support [Plaintiff's] contention" that she was going to her job site at the time of her accident").

III- FACTUAL ALLEGATIONS :

9- Fata has been employed at FCI Williamsburg-Unicor since March 5, 2021, until he was taken off work detail by Mr. Broadwater on July 12, 2023 due to his workplace injury (Doc. 10). Fata's job description is to perform sewing Molle operations working at sewing machines from 7:30 am to 3:30 pm Monday through Friday. Since Mid February 2023, Fata's line 7 of Molle operations has experienced shortage of inmates workers, and Fata was asked to perform different types of sewing operations in line 7. Fata's main operation is to attach the top cover and top cover straps (operation No. 288) to the Molle bag. The second operation that Fata was asked to help intermittently as coverage due to the inmate worker unavailability is to attach the spindrift (operation No. 286) to the Molle bag. Those two operations require pulling on the material and carrying the heavy bags by hand, and carry and pull the bins that contain the necessary materials for each operation (Doc. 1). At no date and time before June 27, 2023 (date of Fata's workplace injury) was Fata ever asked to perform both operations 286 and 288 SIMULTANEOUSLY bouncing from one sewing machine to the other back and forth, absent workers assigned to perform both operations.

10- JUNE 26, 2023 AND JUNE 27, 2023: (Doc. 2)

On June 26, 2023 and June 27, 2023, Fata was asked again to perform both operations No. 286 and 288

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

-------------------------------------------------------------------------------------

SIMULTANEOUSLY bouncing from one machine (operation 286) to the other (operation 288) and both machines were missing finger protection device. The inmate who performs operation No. 286 was not available. The nature of performing alternating operations simultaneously leading Fata to carry the heavy bins and materials, required Fata to pull on his shoulder. At the end of performing both operations, Fata felt pain in his right shoulder. However, Fata took pain medication (Motrin) and continued to sew. On that day 6-27-2023, Fata did not know whether his shoulder pain was caused by a shoulder injury from pulling on the material or from lifting heavy bins during the performance of both operations. Fata's medical records do not show a history of shoulder injury or bone disease that preceded the date of the incident. And Fata was not at fault in performing the operations he was asked to do on those two days.

11- JUNE 28, 2023:

The next morning, on June 28, 2023, the inmate who usually performs operation No. 286 attaching the spindrift had an excused absence. There were 6 bundles of Molle bags that required attachment of spindrift, which is a huge work load for a single worker.

12- Fata was called to the office of his supervisor Mrs. E. Dukes (Foreman) who asked him to get on the sewing machine and perform the spindrift attachment (Doc. 1). No other inmate in line 7 was asked to perform the job or asked to help Fata jointly. Fata explained to Mrs. Dukes that he had already been helping the line in performing this operation, but can no longer perform the double work duty (operations 286 and 288) as he suffers shoulder pain and his and other inmates requests to employ more help (sewers) fell on deaf ears. Fata refused to execute the order in light of his shoulder pain that occurred during the performnace of the double heavy duty operations.

13- On the same day, 6-28-2023, Fata was called to the office of Mr. Broadwater who expressed his concern why Fata took the path refusing to execute Mrs. Dukes order to perform the job, being singled out, and told Mr. Broadwater that he is not fit physically and from health standpoint to perform this heavy duty operation in light of his age of 58, with back and shoulder pain. (Doc. 1). Mr. Broadwater knew and failed to hire more workers in line 7 and opted to write a counseling report that Fata refused to sign as it contained "false allegations" such as Fata's failure to wear safety glasses, as Fata wears prescription glasses instead.

4

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

----------------------------------------------------------------------------------------

FROM: 48860039 FATA, FARID
TO:
SUBJECT: IACA-APA CLAIMS - (PART II)

CASE No. 2:24-cv-03778-MGL-MGB

The counseling had no consideration to Fata's health and physical complaint nor whether the factory had provided Fata side shields to his prescription glasses, as none was ever provided to Fata.

14- Late during the day on 6-28-2023, Fata's shoulder pain increased in frequency and intensity which required Fata to report the next morning on 6-29-2023, to medical "sick call" because of progressive right shoulder pain. P.S. Fata does not have pre-existing right shoulder problems.

15- JUNE 29, 2023: (Doc. 3)

On June 29, 2023, 6:30 am, Fata reported to medical "sick call" for worsening right shoulder pain increasing in frequency and intensity (score 8). Fata reported that the pain started at work after he performed the double operations simultaneously. Fata did not know how he injured it whether because of pulling or lifting at work or combined. Fata was told to continue Motrin. X-rays were obtained on 6-29-2023. On 7-13-2023, Mrs. Truesdale, RN corrected her notes as to the mixed documentation of the site of pain: right versus left shoulder. She noted: "inmate complaining of right shoulder pain".

16- On June 29, 2023, at 9:54 am, Fata was told that he will be out of work (medical idle) until he sees a medical provider, for his shoulder condition is not a medical emergency (Doc. 4). Medical provider emailed Mr. Broadwater and safety on 6-29-2023 (Doc. 4):

"Again, inmates that complain of severe debilitating pain worsened by their job cannot be allowed to continue in said position".

Fata never had pre-existing shoulder pain before performing the double operation simultaneously. Fata's shoulder pain was exacerbated by the job as the medical provider noted and occurred while on the clock. Thus, it is considered as workplace injury. Vander v. U.S. Dept. of Justice, 268 F.3d 661 (9th Cir. 2001); see Wooten v. United States, 825 F.2d 1039 (6th Cir. 1987).

17- On 6-29-2023, after completion of his medical sick call, Fata returned to his supervisor Mrs. Dukes and gave her the medical idle order (Doc. 5) but she denied knowledge of Fata's shoulder pain and injury as Fata reported to her on June 28, 2023.

18- Fata's communications with his supervisor Mrs. Dukes in line 7 on 6-28-2023, were witnessed by Fata's coworker Mr. Roderick Sanford who was present when Mrs. Dukes returned to line 7, and he was interviewed by Mr. Broadwater on 6-28-2023 after Fata had expressed his pain and physical inability to do the job (Doc. 6).

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

19- On 6-30-2023, Fata submitted a copout to Mrs. Dukes asking her to report his injury to "Safety Department" and complete the "Injury Report" BP-140 as required by OSHA (Doc. 7). Mrs. Dukes refused to take Fata's copout and asked him to remove her name and keep Mr. Broadwater's name on the copout only.

20- Because of Mrs. Dukes refusal, Fata reported to safety department at FCI Williamsburg and reported his injury that occurred while on the job, and while Fata was on the clock. Fata gave Mr. Chisolm (safety department) a copy of the June 29, 2023 and June 30, 2023 copouts (Doc. 7). Fata also emailed safety department of his interaction with his supervisor (Doc. 8). Accordingly, Mr. Chisolm asked Mr. Broadwater on 6-30-2023 to generate the inmate "Injury Report" BP-A0140 (Part 1, Injury Report).

21- On July 7, 2023, Fata continued to complain of right shoulder pain and emailed medical provider to be seen ASAP. Fata was told to look for callout as his shoulder condition is not an emergency that requires hospitalization (Doc. 9).

22- On 7-12-2023, Fata was called to Mr. Broadwater's office to complete the BP-140 "Injury Report". Mr. Broadwater conceded that Fata's right shoulder pain/injury was work-related as he noted in the report, Part 1, (Doc. 10). From 6-27-2023, (date of Fata's workplace injury) to 7-12-2023, at least four additional workers in Fata's line 7 quit their job because of increasing work load, absent any help.

23- The BP-140 Injury Report shows that Mr. Broadwater took Fata off work detail after Fata signed the report on day 14 after the injury. Mr. Broadwater violated the required 30-day timeframe on medical idle work related injury per FPI Policy Statement P8120.03 (Doc.11). He told Fata: "You are not able to work here being idle, you will have to re-apply after you are cleared by medical".

24- Mrs. Dukes and Mr. Broadwater denied that Fata reported an injury at anytime, even during the counseling session (Doc. 10), but they did not deny that Fata's injury is work-related as Mr. Broadwater noted in the "Injury Report". Mr. Broadwater kept question 13 of "witnessing inmates to injury" unanswered and omitted the testimony of inmate Roderick Sanford (Doc. 6) whom he interviewed on 6-28-2023 as Mr. Sanford witnessed Fata's communications with his supervisor on that day, and the workplace injury.

25- When Fata reported his shoulder pain to his supervisor on 6-28-2023, he did not know whether he was injured from pulling on the fabric or from lifting the heavy material. The BP-140 Injury Report shows that when Fata continued attaching the spindrift on 6-27-2023, his shoulder pain became more intense causing him to take Motrin (Ibuprofen) which was the reason why Fata rejected Mrs. Dukes' order to continue performing the heavy duty job assignment on 6-28-2023.

26- On 7-31-2023, Fata's right shoulder pain and mobility worsened despite taking Ibuprofen plus Tylenol.

6

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

Fata notified medical as he has not seen a medical provider yet (Doc. 12).

27- On 8-4-2023, Fata was approached by two inmates employed at Unicor who stated that Mr. Broadwater is working with Safety Department to "block" Fata's Injury Report under the Inmate Accident Compensation Act (IACA). Mr. Broadwater has shared Fata's workplace injury at unicor with those two inmates in open discussions held in his office (Doc. 13). Fata emailed his complaint to Mr. Broadwater and to Mr. Chisolm and Mr. Watson (Associate Warden).

28- On 8-11-2023, Fata sent an electronic copout to Mr. Broadwater asking him to refrain from sharing Fata's physical injury with other inmates at unicor as one additional inmate came to Fata stating that Mr. Broadwater will block Fata's Injury Report filed with the Safety Department (Doc. 14). Fata again notified Mr. Chisolm of this event during mainline for fear of retaliation (Doc. 14).

29- Fearing for his safety from Unicor's retaliation, Fata filed a complaint to the Occupational Safety and Health Administration (OSHA) sent on August 1, 2023. Fata alleged three counts (Doc. 15).

30- COUNT ONE: Unicor's concealment of inmates' workplace injury and violation of Section 11(c)(1) of the OSH Act or 29 U.S.C. 660(c). (Doc. 15).

31- COUNT TWO: Unicor's Failure to provide Fata safety side shields for his prescription glasses and safety finger shields as required by the manufacturer package for Brother company (Doc. 15). Fata has signed for or recived safety glasses, but did not receive side shields.

32- COUNT THREE: Violation of the Inmate Accident Compensation Act and BOP P8120.03 (Doc. 15).

33- On 8-7-2023, Fata received the response to his BP-8; Informal Resolution of his grievance filed on 7-2-2023 against Unicor (Doc. 16). Mr. Broadwater failed to answer Fata's complaint or provide remedy.

34- On 8-8-2023, Fata filed a BP-229 that alleged 6 counts. The warden has not answered Fata's BP-229.

35- End of August 2023, Fata was called to Mr. Chisolm's office to resolve or settle this matter. Fata's response was clear: "follow the LAW" under the IACA. Fata re-iterated his intent to go back to work at unicor after he is medically cleared. Fata has not yet been seen by a medical provider as of the date of the meeting.

36- Mr. Chisolm told Fata that the warden is reaching out to Mr. Ben Hall (Unicor's operations manager) to resolve this matter under the IACA.

37- On August 17, 2023, Fata received the investigative OSHA report signed by Mr. R.S. Dunbar (warden) sent to OSHA to answer OSHA Complaint No. 2066626 where the review of eye protection inventories revealed supplies were low/absent (Doc. 18). The OSHA report supports Fata's complaint and BP-229 as Mr. Broadwater lied on his counseling report that falsely accused Fata of not wearing his safety glasses

7

-----------------------------------------------------------------------------------------------------

but Fata wears prescription glasses instead and was never provided side shields when he requested them from his supervisor at unicor in May 2023 (Doc. 19) as unicor did not have any.

38- The August 17, 2023, OSHA report also confirms that when Fata's supervisor asked him to perform operation 286, Fata's sewing machine was not equipped with the proper guarding as Fata noted in his complaint to OSHA (Doc. 15). The safety finger guards were missing in Fata's sewing machine, and Fata's supervisor Mrs. Dukes failed to instruct mechanics to place the finger guards into the proper position as required by the manufacturer - Brother company (Doc. 18).

39- When OSHA initiated its investigation of Fata's complaint (Doc. 15), the OSHA safety officer at FCI Williamsburg, Mr. Broughman, issued a report detailing Unicor's violations. The warden's report sent to OSHA on 8-17-2023, altered Mr. Broughman's original report related to unicor's OSHA violations (Doc. 18).

40- Fata is asking this court to engage in discovery to obtain Mr. Brughman's original report (authentic) from safety department that shows the true depth and extent of Unicor's OSHA violations as [proximate cause] to Fata's injury that unicor failed to report to Safety department committee and OSHA. Fata has filed a BP-8 against the warden's office in regard to the alteration of FCI Williamsburg's inspection report in response to the OSHA complaint (Doc. 20)(In October 2021, FCI Williamsburg Unicor received an OSHA citation related to safety issues that led to one inmate's injury for cutting (amputation) his finger while on the job). The warden failed to respond and recommended filing a BP-10 bypassing a BP-229. Fata filed a BP-11 under the PLRA (Doc. 20), but Region and Central Office failed to respond.

41- On 9-8-2023 and 9-16-2023, Fata asked his warden to respond to his BP-229 against unicor as the deadline to respond under the PLRA has passed. During mainline, the warden asked Fata what remedy is he requesting to settle the case, Fata responded: "Follow the LAW" -IACA- (Doc. 21).

42- On September 21, 2023, Fata was called to meet with Mr. Broadwater, and Mr. Ben Hall. Mr. Chisolm was present at the meeting. Mr. Ben Hall conceded to pay Fata his lost-time wages from 6-28-2023 to date of return to work. In fact, Fata received a wage for the month of September 2023. During the meeting, Mr. Broadwater asked Fata to withdraw his BP-229, but Fata refused until his lost time wages are paid under the IACA pending the safety committee determination. Fata told Mr. Ben Hall that he is planning

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

------------------------------------------------------------------------------------------------

FROM: 48860039 FATA, FARID
TO:
SUBJECT: IACA-APA CLAIMS (PART III)

CASE No.

to return to work at unicor pending medical evaluation and after medical clearance.

43- On 9-28-2023, Fata had a clinical encounter with the BOP medical provider for the first time since after his medical sick call on 6-29-2023. The provider diagnosed Fata with impingement syndrome of the shoulder and recommended that Fata return to work with restriction (Doc. 22).

44- Based on the medical provider evaluation on 9-28-2023 (Doc. 22), Fata was rehired at Unicor on 10-2-2023, after Mr. Broadwater discussed Fata's condition with medical provider on 9-29-2023 (Doc. 23).

45- On October 3, 2023, medical provider Mrs. Harrell, PA, discussed Fata's work restrictions with physical therapist (PT) who recommended to reinstate Fata's medical idle on October 4, 2023 (Doc. 24) for 3 months to allow further PT: Mrs. Harrell has also notified safety department and unicor. Those findings rebut the warden's response to Fata's BP-229 (Doc. 30, Admin. Remedy Case # 1173819-F1).

46- Fata is filing the physical therapy clinical encounters. Fata asked the physical therapist whether his shoulder's impingement and impaired muscle performance can be proximately caused and exacerbated by his work at unicor as Fata's injury occurred after Fata was pulling on the fabric and lifting the Molle bags. (Doc. 25).

47- At the request of Mr. Chisolm, Fata met with him and Mr. Broadwater in safety department on October 5, 2023. During the meeting, Mr. Chisolm pressed Mr. Broadwater to pay Fata his lost-time wages from the date of injury, as Mr. Chisolm's position is that this matter has already been agreed upon with Mr. Ben Hall during the September 21, 2023 meeting.

48- On October 10, 2023, Fata met with Mr. Broadwater who held a telephone conference with Mr. Ben Hall. Both parties agreed that Fata has been paid his lost-time wage for the month of September 2023. Mr. Hall added and told Fata: "we owe you the wages of July 2023 and August 2023, and one day of October 2, 2023". As to October 2023 and November 2023, Mr. Ben Hall stated that he would wait on the safety committee report for further payments / determination.

49- On October 16, 2023, Mr. Chisolm called Fata to his office and notified him that the Safety Committee determined that Fata's injury is not work related. (Doc. 26). In the report, Mr. Chisolm noted on August 7, 2023, that Fata should be counseled to report his injury to his supervisor, though

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

---------------------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: AMENDED COMPLAINT - I
DATE: 12/01/2024 03:20:22 PM

CASE No. 2:24-CV-03778-MGL-MGB

Fata did report his injury to his supervisor when Fata's injury occurred while on the clock on 6-28-2023 and the evidence (copouts and emails) and testimony of Mr. Roderick Sanford showed that Fata did notify his supervisor (Doc. 1; Doc. 6; Doc. 7). 28 C.F.R. 301.105(a). When asked whether he submitted Fata's copouts to the Safety Committee that Fata reported his shoulder pain to his supervisor and the affidavit of Roderick Sanford who witnessed Fata's communications with his supervisor in line 7 on 6-28-2023, Mr. Chisolm acquiesced though Fata had given him copies of those copouts. Mr. Chisolm was repeatedly made aware of the OSHA report and Unicor's unsafe workload conditions, absent PPE, that were omitted in Fata's BP-140 Injury Report being causative to Fata's injury while on the clock. And safety officers Mr. Brughman and Mr. Turner raised the safety concerns and OSHA violations with Mr. Broadwater repeatedly, with no avail, as they should have ·reported those violations with the correspondent corrective actions to the Safety Committee as required under BOP Program Statement 1600.14 (formerly 1600.11).

Mr. Chisolm could not comment on his BP-140 Report's conflicting recommendation to retrain Fata on the operating procedure of the equipment as Fata's injury was not work related per the Safety Committee's decision. Mr. Chisolm (Chair of Safety Committee) had no answer as Fata was at "no fault" in performing the assigned "double sewing operation simultaneously", absent PPE, and Fata did follow the instructions and had excellent quality of work to follow assigned procedures. 28 C.F.R. 301.105(a). The Safety Committee kept page 2, question 4 of Fata's BP-140 Injury Report, "blanc" (Doc. 26), and its chair told Fata he will call for him to receive a completed copy of the Committee's review comments, but he never did, 28 C.F.R. 301.105(b), knowing that he (as head of Safety Department) is required under BOP P.S. 1600.14 to report to the Committee the log of unicor's OSHA violations that caused Fata's injury, but he never did.

50 - On October 19, 2023, Fata filed a grievance asking Mr. Chisolm as chair of the Safety Committee to clarify the 180 degree change because the Committee's decision contradicts the evidence and testimony of Mr. Roderick Sanford omitted in Fata's BP-140 Injury Report, page 1, question 13, that Fata did report his injury to his supervisor and that Unicor is omitting or concealing the hazardous workload conditions in the BP-140 Injury Report, that caused Fata's injury. 28 C.F.R. 301.105(a). For Fata's injury occurred while on the job and while on the clock (Doc. 27), absent PPE (see OSHA Report).

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------------------------------

51 - On October 30, 2023, Mr. Chisolm responded to Fata's BP-8 (Doc. 28), but did not complete the Safety Committee's page 2, question 4 of the BP-140 Injury Report that was kept "blanc". He told Fata he will call for him to receive a copy of the Committee's review but never did. 28 C.F.R. 301.105(b). Accordingly, Fata is respectfully asking the Honorable Court to engage in Rule 26 discovery to access the Safety Committee minutes meeting on October 12, 2023 and any "documentary evidence or testimony" considered by the Committee including the emails of safety officer Mr. Turner to Mr. Broadwater warning him of the unsafe work conditions at Unicor that stand in violation of OSHA Rules and Regulations, causative to workplace workers' injuries as also shown in two "OSHA citations" against Unicor, one involving worker Jonathan Shepard whose thumb was amputated due to hazardous old machinery in 2021, and his injury was deemed "not work related". Such evidence is material and essential to the conclusion of this case as it has been omitted in Fata's BP-140 Injury Report and there is good cause of success on the merits had this information been presented to the Safety Committee on October 12, 2023. For Mr. Brughman from Safety Department stated: "I would shut down Unicor for its unsafe practices". Fata filed a BP-229, BP-10 and BP11 (Doc. 28) because there is plausible consideration upon the evidence Fata filed in his Amended Complaint that the Safety Committee's decision relied on false information and incomplete records and is contradicted by the evidence and testimony of Mr. Roderick Sanford that (1) Fata did notify his supervisor and (2) FCI Williamsburg-Unicor is concealing and covering-up the hazardous work conditions that it omitted in the BP-140 Injury Report being causative to Fata's injury while on the job and on the clock, absent PPE. 28 C.F.R. 301.105(a). Accordingly, under the Freedom Of Information Act (FOIA), 5 U.S.C. 552, Fata requested the Safety Committee minutes meeting from the agency represented by its supervisory attorney (Doc. 29), but the agency failed to comply with FOIA.

52 - On October 24, 2023, Fata received the warden's response to his BP-229 filed against Unicor in August 2023, Admin. Remedy Case #1173819-F1 (Doc. 30). The response came immediately after the Safety Committee determined that Fata's injury is not work related. The response conceded that Fata was paid lost time wage for September 2023. For the evidence and testimony and OSHA Report belie the warden's response and contradict the Safety Committee decision, simply because the response was not prepared by him: for Fata never met with Mr. Ben Hall in the [warden's office] on September 21, 2023 according to the warden's response. During mainline, the warden conceded to Fata that his response was written by Mr. Broadwater instead. Fata filed a BP-8 against his warden who was aware of Unicor's unsafe hazardous work conditions absent PPE omitted in Fata's BP-140 Injury Report, and thus concealed from the Safety Committee.

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

53 - On November 2, 2023, Fata had a medical follow-up while continuing physical therapy to his shoulder, and updated Mr. Broadwater of his intent to return to Unicor after medical clearance (Doc. 31, 32).

54 - Fata fully exhausted his administrative remedies against Mr. Broadwater (Doc. 17, 30), Safety Committee Chair Mr. Chisolm (Doc. 27, 28), and his warden Mr. Graham (Doc. 20).

55 - Fata asserts there exists a conspiracy between Mr. Chisolm and Mr. Broadwater to conceal Unicor's hazardous work conditions absent PPE, and that caused the Safety Committee's decision making to deny workplace injuries based on false information contradicted by the evidence and testimony. The case of inmate Gary Thomas BOP No. 21645-032 is alarming. Mr. Thomas gave Fata permission to file the warden's response to his BP-229, Admin. Remedy Case #1177969-F1, where Thomas developed skin burns and nerve damage in both arms and hands from operating the heat searing machine at unicor, as he was not provided proper PPE to sustain 1500 degree Fahrenheit as required by the manufacturer. Here, as in Fata's case, Thomas' supervisor denied knowledge of the injury in the BP-140 and the warden and Unicor falsely claimed that the local safety department recommended that "latex gloves" can be worn if requested by the operator. Such assertions made by the warden and unicor manager represent a blatant violation of safety measures as implemented by the manufacturer and were omitted in Thomas' BP-140 Injury Report upon which the Safety Committee relied on to make its decision (Doc. 33).

56 - Thomas filed an OSHA Complaint against FCI Williamsburg-Unicor for failing to provide him proper PPE under the instructions of the Manufacturer: Pearson Industries Prattville, Alabama, USA (Doc. 33). The Safety Committee falsely determined that his injury was not work-related though it occurred while on the job and while on the clock as in Fata's case, absent PPE, and he did notify his supervisor who was in denial and omitted the unsafe causative hazardous work conditions in his BP-140 Injury Report. The warden falsely claimed that "latex gloves" were appropriate PPE, that was rebutted by the Regional Director (BP-10). And as in Fata's case, the Safety Committee relied on incomplete and false information and kept Part II, Question 4 of the Injury Report "blanc", and thus denied Thomas' work-related injuries.

57 - On May 11, 2024, still idle, Fata reported to medical his recurrent right shoulder pain that was progressive with mobility restrictions since the end of April 2024 (Doc. 34) as the recurrence of his "right shoulder pain" from the injury warranted the medical provider to see him on 7-12-2024, and order an MRI of the right shoulder (Doc. 36).

58 - Fata is attaching his affidavit (Doc. 35), signed under penalty of perjury.

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

-----------------------------------------------------------------------------------------------------

59 - On July 12, 2024, Fata notified Mr. Broadwater that he had seen the medical provider who ordered an MRI of the right shoulder, with "no work duty" as Fata remained idle, and committed to return to work at unicor once cleared by medical (Doc. 37).

60 - On September 9, 2024, the U.S. Attorney for the District of South Carolina was served of Fata's above referenced civil action.

61 - On September 11, 2024, Mr. Chisolm called Mr. Thomas to his office as Mr. Broadwater was also present during the meeting. (Doc. 38, affidavit of Gary Thomas).

62 - Mr. Chisolm asked Mr. Thomas to sign a "waiver to sue". He requested to take Thomas' BP-229 and the warden's response that shows the hazardous work conditions, and take the Regional Director's response to Thomas' appeal (BP-10) as the Director rebutted the warden's and unicor false statements upon which the Safety Committee relied on to deny his work-related injury. Thus, confirming that Unicor is covering-up the hazardous work conditions causative to the injury that it omitted in Thomas' BP-140 Injury Report. Accordingly, the Safety Committee's decision is undermined based on incomplete records and false information and is contradicted by the evidence.

63- Thomas refused to sign the "waiver request" and told Mr. Chisolm and Mr. Broadwater that he needs to check with his attorney first before he signs any document as he is in the middle of exhausting his administrative remedies before he files in court to litigate his case against Unicor.

64 - Thomas was intimidated by both Mr. Chisolm and Mr. Broadwater in an attempt to silence him and deny him access to the Honorable Court to litigate his case and present the facts to the court as the conspiracy that exists between those two men to cover-up the hazardous work conditions at Unicor in the BP-140 and to the Safety Committee, all similar to Mr. Broadwater's counseling report of Fata on 6-28-2023 that concealed the hazardous workload conditions at Unicor and caused Fata right shoulder injury. Such conduct of Mr. Chisolm and Mr. Broadwater's actions can be construed as "Obstruction or Impeding the Administration Of Justice" with respect to Thomas's access to present the Court the fullest information possible concerning the above noted conspiracy that corrupted the Safety Committee's decision making, 42 U.S.C. 1985 (Doc. 38).

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

----------------------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: AMENDED COMPLAINT - II
DATE: 12/04/2024 07:46:46 PM

Case No. 2:24-CV-03778-MGL-MGB

65 - WHEREFORE, plaintiff demands engagement in Discovery requesting (1) the electronic communications between Safety Department and Unicor where Safety Officer Mr. Turner had warned Mr. Broadwater of the OSHA violations committed at Unicor causing Unicor workers' bodily injuries, as those work hazards were omitted in the BP-140 Injury Report and thus, were concealed from the Safety Committee.

(2) The Safety Committee minutes meeting on October 12, 2023, that are essential to the conclusion of this case, as there is good cause of success on the merits: for the Safety Committee's decision relied on incomplete and false information as shown in the minutes. Plaintiff also requests judgment against defendants, and recovery for lost-time wages as his injury is "work-related" and covered under Title 28, Part 301, Inmate Accident Compensation, plus court fees and punitive damages as the Court deems proper.

(3) Under BOP P.S. 1600.14 (formerly 1600.11, National Occupational Safety and Health Policy), the Safety Department is required to conduct hazard assessments at Unicor and generate a log for unsafe working conditions for workplace hazards and injuries, and a copy of each report must be presented to the Institution Safety Committee, with the corresponding corrective actions taken. Plaintiff is requesting those reports from the Safety Department related to Unicor's unsafe working practices that caused Fata's workplace injury, as the safety department's officers, Mr. Brughman and Mr. Turner, both stated that numerous corrective actions were not taken against unicor because of the cover-up of the Safety Committee's Chair who omitted or concealed those reports from the Safety Committee. As a result, Mr. Chisolm has announced his retirement effective April 2025, and is now on leave to the rest of his term as head of the Safety Department.

(4) Unicor's OSHA citations from 2021 to present, as one unicor worker, Mr. Jonathan Shepard, had his left thumb amputated due to hazardous old machinery while on the job and on the clock, but the Safety Committee classified or designated his injury as "not work-related": Unicor received an OSHA citation for the harzardous work condition that caused Mr. Shepard's injury.

IV - CONCLUSIONS:

The Safety Committee's decision classifying Fata's injury as "not work related", relied on incomplete records and false information and is contradicted by the evidence and testimony as (1) Fata did notify his supervisor of the injury witnessed by Mr. Roderick Sanford whose testimony was omitted in Fata's BP-140

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

----------------------------------------------------------------------------------------------------

Injury Report (Page 1, Question 13), 28 C.F.R. 301.105(a); and (2) FCI-Williamsburg-Unicor is concealing and covering-up the hazardous and unsafe work conditions that caused Fata's injury, absent PPE, as substantiated by the OSHA Report and the record, that were omitted in Fata's BP-140 Injury Report and thus concealed from the Safety Committee: For the Safety Committee did not complete and kept "blanc" Fata's BP-140, page 2, Question 4 (see 28 C.F.R. 301.105(b)), same as in the case of Gary Thomas' BP-140 Injury Report that relied on Unicor's false information to provide him PPE, rebutted by the BOP Regional Director: For the Chair of the Safety Committee (Mr. Chisolm) who was aware of Unicor's OSHA citations

(1) has conceded during his meeting with Thomas on 9-11-2024, to Unicor's unsafe work conditions and false information upon which the Safety Committee based its decision to deny Thomas his work related injury, and

(2) asked Mr. Thomas to sign a "waiver to sue" to silence him and cover-up the scheme, and

(3) requested to take away Thomas' BP-229 and the warden's response to conceal Unicor's false information that corruptly deviated the Safety Committee's decision-making, and

Accordingly, defendants and the Institution Safety Committee have acted in violation of the IACA and its Regulations for purposes of the APA to deny Fata's injury that is work-related and grounded on evidence and testimony; 28 C.F.R. 301.101(b); 301.102(a); 301.105(a); and 301.202(a); thus, covered under Title 28, Part 301, Inmate Accident Compensation. See Ren v. United States, 60 F. 4th 89, 93 (4th Cir. 2023) (quoting 5 U.S.C. 706(2)(A)).

Signed under penalty of perjury. 28 C.F.R. 1746.

Respectfully Submitted,

Farid Fata    *Farid Fata*    12-5-2024
# 48860-039
FCI Williamsburg
P.O. Box 340
Salters, SC 29590

15